LARRY D. DICKERSON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Illinois Minerals Company, Appellee).

Fifth District (Industrial Commission Division) No. 5—90—0810WC

Opinion filed December 20, 1991.—Rehearing denied February 25, 1992.

Harold B. Culley, Jr., of Raleigh, for appellant.

Edward M. Vokoun, of Evans & Dixon, of St. Louis, Missouri, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Petitioner-appellant Larry Dickerson brought an occupational disease claim on May 18, 1983, alleging that he had contracted the disease of silicosis arising out of and in the course of his employment with respondent-appellee Illinois Minerals Company (Illinois Minerals) between 1959 and 1971. The arbitrator rendered a decision in favor of petitioner. Upon appeal to the Industrial Commission, a decision was rendered reversing the arbitrator's determination, holding that petitioner's claim was barred because petitioner's disablement did not occur within the requisite statutory time frame. The decision was af-

firmed by circuit court of Alexander County, and the instant appeal followed.

The pertinent facts are these. In 1959, petitioner began to work with Illinois Minerals as a bagger boy. Illinois Minerals produces silica rock which is ground up into a fine powder and shipped to paint companies. As a bagger boy, petitioner's duties were to insert paper bags in a machine and activate a button which caused the machine to fill the empty bags. The machine often failed to hold onto the bags. This resulted in the bagger boy often becoming covered with silica dust. The building was windowless and dust was ever-present.

After four or five years as a bagger boy, petitioner began to operate machinery in the mills. Petitioner's last job with Illinois Minerals was as a "crusher operator." This job required him to watch material go up a conveyer belt and into a crushing system. Occasionally, he would break large pieces of material with a sledge hammer. In 1968, petitioner left Illinois Minerals and worked as a machine operator. He returned to Illinois Minerals briefly in 1971 and worked as a boiler operator. Next, he worked as a laborer on State highway construction sites. In 1974, petitioner began working as the driver of a dump truck, a job which lasted until 1978 when he was laid off. Finally, in 1978 petitioner commenced work with the W.A. Willis Trucking Company (Willis), where he hauled building materials and agricultural lime. Toward the end of his employment with Willis in 1982, petitioner became unable to handle his duties because he was having breathing problems. As a result, petitioner quit Willis in October of 1982.

On the same day he quit working, petitioner quit his pack-a-day smoking habit and was admitted to St. Francis Medical Center, where an excisional biopsy was performed. The biopsy indicated a granulomatous inflammation, although no etiological agent was found. Petitioner was referred to Dr. Peter Tuteur, a physician board certified in internal medicine and pulmonary diseases. Tuteur diagnosed petitioner to be suffering from silicosis and concluded that this condition resulted from petitioner's employment with Illinois Minerals. According to Tuteur, the silicosis resulted in a severe obstructive ventilatory defect and is likely to progress to a more severe state over time.

Dr. Robert Bruce, however, a specialist in pulmonary diseases who examined petitioner at the request of Illinois Minerals, was of the conclusion that the airway obstruction problems were due primarily to bronchitis and emphysema, which were a result of petitioner's cigarette smoking and a childhood bout with pneumonia. Bruce did testify,

however, that between October of 1982 and January of 1984, there was evidence of the progression of silicosis.

Petitioner frames the following issues for review: (1) whether the circuit court and Industrial Commission erred in failing to read section 1(f) of the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1989, ch. 48, par. 172.36(f)) as subject to the discovery rule; and (2) whether the circuit court's and Industrial Commission's interpretation of section 1(f) of the Workers' Occupational Diseases Act (the Act) violates petitioner's constitutional rights under applicable due process, equal protection, special legislation and certain remedy provisions of the Federal and Illinois constitutions.

■ Section 1(f) of the Act provides:

"No compensation shall be payable for or on account of any occupational disease unless disablement, as herein defined, occurs within two years after the last day of the last exposure to the hazards of the disease, except in the cases of occupational disease caused by berylliosis or by the inhalation of silica dust or asbestos dust and, in such cases, within 3 years after the last day of the last exposure to the hazards of such disease and except in the case of occupational disease caused by exposure to radiological materials or equipment, and in such case, within 25 years after the last day of last exposure to the hazards of such disease." Ill. Rev. Stat. 1989, ch. 48, par. 172.36(f).

Section 6(c) of the Act provided during the relevant time period:

"In any case, other than injury or death caused by exposure to radiological materials or equipment or asbestos, unless application for compensation is filed with the Commission within 3 years after the date of the disablement, where no compensation has been paid, or within 2 years after the date of the last payment of compensation, where any has been paid, whichever shall be later, the right to file such application shall be barred." Ill. Rev. Stat. 1983, ch. 48, par. 172.41(c).

■ Petitioner's argument on the first issue is as follows. The "discovery rule" provides that "when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute [of limitations] begins to run." (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868.) If the discovery rule is not read into section 1(f), then there is no remedy where a worker suffers from an industrial disease which by its nature does not manifest itself within three years of the last injurious exposure. Such a result, petitioner contends, is contrary to the remedial purpose of the Act, in that section 1(f) acts to routinely

bar claims involving diseases with long latency periods. The only way to avoid this result is to read the discovery rule into section 1(f) of the Act, so that a claimant has three years from the date of discovery within which to file his claim.

In *Goodson v. Industrial Comm'n* (1989), 190 Ill. App. 3d 16, 545 N.E.2d 975, the court was faced with a claim for death benefits under the Act by a surviving spouse. The court held that where the petitioner's husband's last exposure to asbestos was outside of the allowable period of section 1(f), the claim was barred. In so holding, the court observed:

> "The Workers' Occupational Diseases Act reflects the legislative balance between the rights of employees and employers. [Citation.] The purpose of the limitation provisions in question is to protect the employer against claims too old to be adequately investigated and defended. [Citation.] Accordingly, sections 1(f) and 6(c) should be read together to effectuate the legislative intent. Section 1(f) clearly states that no compensation shall be payable for or on account of any occupational diseases unless the employee becomes disabled within [the applicable time period] of his last exposure to the hazard. That section evinces a legislative intent to reasonably limit an employer's period of potential liability for both disability benefits payable to an employee and death benefits payable to a survivor." (190 Ill. App. 3d at 18-19, 545 N.E.2d at 976-77.)

The *Goodson* court further stated, "[w]e find that the disablement of the decedent within [the applicable time frame] was a condition precedent to the survivor's recovery. Therefore, the petitioner's claim was barred by section 1(f) of the Act." 190 Ill. App. 3d at 20, 545 N.E.2d at 977.

■ In the case *sub judice*, it is undisputed that petitioner's disablement occurred more than three years after the last day of exposure, and as a result, a plain reading of the statute bars plaintiff's claim. The statute does not contain a discovery rule, and we refuse to read one in because section 1(f) operates as a statute of repose rather than one of limitations. As the court indicated in *Kline v. J.I. Case Co.* (N.D. Ill. 1981), 520 F. Supp. 564, 566:

> "Statutes of limitations extinguish, after a period of time, the right to prosecute an accrued cause of action. [Statutes of repose], by way of contrast, limit[ ] *** potential liability by limiting the time during which a cause of action can arise. As plaintiffs contend, the statute serves to bar causes of action before they accrue."

Illinois courts have not hesitated to apply repose provisions despite the acknowledgement that, as in this case, an individual with a long latency disease may be barred from recovery. (See *Olson v. Owens-Corning Fiberglass Corp.* (1990), 198 Ill. App. 3d 1039, 1043, 556 N.E.2d 716, 719 (and cases cited therein).) Accordingly, we hold that section 1(f) is not to be read as subject to the discovery rule, and the commission correctly interpreted the statute as barring petitioner's claim.

Petitioner next argues that the Industrial Commission's interpretation of the Act renders the Act unconstitutional. Specifically, petitioner relies upon due process, equal protection, special legislation and certain remedy guarantees of both the Federal and Illinois constitutions in advancing his arguments. Petitioner reminds us that courts are " 'obliged to construe statutes both to avoid absurd or unjust consequences and to affirm their constitutionality' " (quoting *People v. Williams* (1987), 119 Ill. 2d 24, 28, 518 N.E.2d 136, 138), and invites us to join the conclusion of a foreign court that according to the present state of medical knowledge, it is clear that silicosis often manifests itself well after the period of years provided in section 1(f). (See *Caruso v. Aluminum Co. of America* (1984), 15 Ohio St. 3d 306, 473 N.E.2d 818.) Petitioner further asks us to conclude that the repose period will routinely, as opposed to occasionally, bar the claim of a silicosis-suffering claimant, and as a result the statute is unreasonable. Additionally, petitioner argues that there is no justification for a different repose period for radiological- or asbestos-related diseases as opposed to silicosis.

The problem with petitioner's invocations is that they are not supported by the record of this case. While testimony clearly exists in the record that petitioner suffered from silicosis as a result of his exposure to silica dust at Illinois Minerals, petitioner points to no testimony or other evidence to support his medical conclusions. Petitioner's brief contains only one reference to a medical authority, to wit: in silicosis cases "[u]sually 20 to 30 [years] of exposure are necessary before the disease becomes apparent." (Merck Manual 670 (14th ed. 1982).) However, the constitutional challenges petitioner makes in this case have to do with the period of time provided in which to bring a claim *between the last date of exposure and manifestation of the disease,* not the exposure period usually present before the disease manifests itself in the first instance. Based on the record before us and the scant authority petitioner brings to our attention, we are unable to say that this is a distinction without a difference.

The legislature has provided claimants who suffer silicosis a longer period within which to file a claim than the typical claimant. While colorable constitutional challenges might well be present if petitioner's arguments were supported by evidence in the record and authoritative medical literature, the conclusions petitioner wishes us to draw are not so evident that judicial notice may be taken of them, and we therefore refuse to speculate as to the statute's alleged unconstitutionality.

For the foregoing reasons, we affirm the judgment of the circuit court of Alexander County.

Affirmed.

McCULLOUGH, P.J., and STOUDER, WOODWARD, and LEWIS, JJ., concur.